UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JAMES CLYDE PRINE                    CIVIL ACTION NO. 10-cv-1429

VERSUS                               JUDGE HICKS

WINN CORRECTIONAL CENTER              MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

    James Clyde Prine, Jr. ("Petitioner") engaged in Yahoo chat room communications with persons he believed were a 14-year-old female and a 28-year-old female with an 11-year-old daughter.  He was actually communicating with officers in the Internet Crimes Against Children Task Force that attempts to locate sexual predators by having agents pose as minor children online.

    A Bossier Parish jury convicted Petitioner of computer-aided solicitation of a minor in connection with the communications with the 14-year-old and attempted aggravated rape (which includes when the victim is under the age of 13) in connection with communications and actions taken regarding the 11-year-old.  Petitioner was sentenced to 20 years imprisonment for the attempted aggravated rape and five years for the other conviction, with the terms to run consecutively.  The convictions and sentences were affirmed on direct appeal.  State v. Prine, 13 So.3d 758 (La. App. 2d Cir. 2009), writ denied, 27 So. 3d 298 (La. 2010).  Petitioner now seeks federal habeas corpus relief on the grounds that the evidence

was insufficient to support the attempted aggravated rape conviction because it was impossible for the crime to have been committed on a fictitious or imaginary victim. For the reasons that follow, it is recommended that the petition be denied.

**Relevant Facts**

A detective selected a screen name "Lil Bossier Hottie" and told Petitioner who initiated the contact that he was a 14-year-old female high school student from Bossier. Petitioner communicated with Hottie about sexual topics, such as role play in which he would portray an intruder or burglar who came to her bedroom and molested or raped her. Petitioner and Hottie made arrangements to meet at a gas station and then go to a motel where Petitioner said, in graphic terms, that he intended to have sex with the girl.

On the same day Petitioner chatted with Hottie, he was also chatting with "Single Mom for Love 1978", whose name was Brooke, who had an 11-year-old daughter. "Brooke" asked Petitioner if the fact that she had an 11–year–old daughter was okay with Petitioner, who responded that it was. Petitioner then asked, "do you fool around at all or are you ... totally looking for some kind of relationship Brooke?" The officer wrote, "[f]ool around is fine. Jess [the 11–year–old] is always there though." Petitioner asked, "[s]he doesn't walk in does she, LOL?" Petitioner asked, "[w]hat if she did?" to which the agent responded with a smiling emoticon and said that it would be all right. Petitioner then asked, "Do you want to teach her?"

Petitioner continued, asking whether "if we fooled around could she, the 11–year–old, be included." The agent said yes and Petitioner then inquired whether the girl was a virgin

and asked for pictures. The agent said, "yes, right now," and sent Petitioner a picture of the fictitious 11–year–old ("Jess"). The picture was actually of a Shreveport detective taken when she was between 10 and 13 years old. Petitioner responded that Jess was beautiful and asked, "When would you like to do this?"

The conversation continued and Petitioner said, "Well, we go to do Jess ... we going to do Jessica, too?" Petitioner said that he would be gentle and that he did not have to have sexual intercourse with Jess, he could just touch her. Petitioner asked whether Jess's breasts had developed yet and acted disappointed when told, "barely." Petitioner also asked, "Will you work her over or just me?"

The agent told Petitioner that "she" lived in Brownlee Estates. Petitioner later stated, "I think we should meet at your home. You can come outside and then we can decide, okay? Then if we like each other ... we're already there, okay?" The agent told Petitioner that the store at the corner of Airline Drive and Brownlee Road, which was the meeting place they had discussed earlier, would be a preferable meeting place.

Petitioner made more sexual comments, such as "[e]leven is very young but she will have parental permission; LOL." Petitioner then asked, "You need your brains f*cked out? You a multiple orgasm woman?" Petitioner stated, "I would love to f*ck you till you passed out ... [a]nd when you came to I would be f*ck*ng Jessica." Petitioner also stated, "[h]ell even if you didn't pass out you could act like it ... then come to as I worked her over." Petitioner also stated that "[i]f she is in there before you pass out that is good. I want her to see her mom totally f*ck*d and out like a light."

Petitioner discussed arrangements to meet. Jess was not to be present at the meeting. The agent admitted that there had been no contemplation of sex at the meeting place, stating that, "During the beginning of our conversation I indicated that I was at work and that Jessica was at home by herself and that we were going to meet somewhere besides my house[.]" Petitioner stated that "[w]e can meet there ... [e]ither of us can say no to this and we can still be friends, okay?" Petitioner stated, "I have condoms for Jessica."

The agent who portrayed Brooke went to meet Petitioner at the agreed-upon location, accompanied by a detective and a female officer who fit the profile of Brooke (a 28–year–old blonde female). They waited in the parking lot until they saw a black Crown Victoria that matched Petitioner's description of his car. The male officers "leaned back" in the vehicle when they saw Petitioner's car pull in. Petitioner pulled up along the driver's side and "kind of waved" at the female officer. As Petitioner exited his car, the detective arrested him.

The detective testified that as he was advising Petitioner of his rights, Petitioner said something like, "I knew better. I have a wife at home with MS and I have a mildly mentally handicapped daughter and I knew better than this." The detective again advised Petitioner of his <u>Miranda</u> rights at the police station. Petitioner admitted to having conducted the two online chats and setting up meetings with both online profiles. However, he said that he did not show up to meet the first officer (Hottie) because "something wasn't right" with that one.

Officers recovered a box in the trunk of Petitioner's car. The box was not sealed and contained several rolls of tape, handcuffs and keys, rope, two razor blades, two box cutters, gloves, pens, and a battery. The officers also found a mask, zip ties, medical tape, a

flashlight, condoms, towels, and a pistol in the trunk of Petitioner's car. When the officers found the rope, tape, handcuffs, and gun, Petitioner said that he used those items on a girl that he knew who was a schoolteacher but, "There's no kids involved ."

**Analysis**

Louisiana defines aggravated rape as including a rape committed where the sexual intercourse is deemed to be without lawful consent of the victim because the victim is under the age of 13 years. Lack of knowledge of the victim's age shall not be a defense. La. R.S. 14:42(a)(4). Petitioner was charged with attempted aggravated rape. Louisiana's attempt statute states: "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose." La. R.S. 14:27(A). The statute adds in subsection (B) that "mere preparation to commit a crime shall not be sufficient to constitute an attempt."

Petitioner challenged the sufficiency of the evidence on direct appeal. He argued that a conviction for attempted aggravated rape was inappropriate when the victim was as fictitious as Roger Rabbit, Alice in Wonderland, or the Wizard of Oz. He argued that he should have been charged under the computer-aided solicitation of a minor statute, which specifically provides that it is not a defense if the believed victim is actually a law enforcement officer.

The state appellate court carefully reviewed the evidence and the applicable statutes. It noted that the distinction between which actions constitute an attempt, as opposed to mere preparation, is fact specific to each case, and the jury must determine where an accused's actions fall on the continuum. The court noted that the attempt statute rejects factual impossibility as a defense, and another appellate decision, State v. Thurston, 900 So.2d 846 (La. App. 5th Cir. 2005), writ denied, 918 So.2d 1040, 1041 (La. 2006), affirmed a conviction of attempted aggravated rape in a similar undercover internet operation where an agent posed as a mother of a 9-year-old daughter, the defendant made detailed plans to meet for a sexual encounter, and he arrived at the selected location. The appellate court in Petitioner's case concluded that a reasonable juror could find that it was proven beyond a reasonable doubt that Petitioner had the specific intent to have intercourse with an 11-year-old child, and it rejected the fictitious victim argument as vitiated by the attempt statute's statement about factual impossibility being immaterial. State v. Prine, 13 So.3d at 763-766.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

The state appellate court's resolution of the sufficiency of the evidence claim was quite reasonable given the record.  Petitioner had made specific statements about his intent to have sex with the child, selected a meeting place, and arrived with the condoms that he had stated he would use when he had sex with the child.  Petitioner also made statements that showed his guilty knowledge and intent.

The fact that the victim was fictitious does not require habeas relief.  The attempt statute, as noted by the state court, specifically provides that it is immaterial whether the accused would have actually accomplished his purpose.  The federal courts have often affirmed convictions under similar circumstances for violating 18 U.S.C. § 2422, which makes it a crime to knowingly persuade an individual, or attempt to do so, to travel in interstate commerce to engage in any sexual activity for which any person can be charged with a criminal offense.

One federal conviction came after texting and phone calls between the defendant and a girl he thought was 15, but who was actually an undercover police officer, and the two agreed to meet to have sex. The defendant was arrested when he arrived at the meet-up location. He was charged with a federal crime of attempting to engage in illegal sexual activity that would be statutory rape under Mississippi law. He argued on appeal that the charge of statutory rape was impossible because "Madison" was a "faux person," making it impossible for him to have actually committed statutory rape. The Fifth Circuit pointed out that the defendant was not charged with Mississippi statutory rape but with *attempting* to get a minor to engage in activity that, if accomplished, would constitute statutory rape. The Court stated that it "has repeatedly held that factual impossibility to complete a criminal act does not preclude a conviction for attempting to break the law," and the "argument that he could not have committed statutory rape with a 'faux child' does not stop him from being charged with attempting to break the statutory law, if the facts had been as he thought they were." U.S. v. Lundy, 676 F.3d 444, 448-49 (5th Cir. 2012). There are numerous other reported decisions of federal convictions upheld under similar circumstances. See, e.g., U.S. v. Pawlowski, 682 F.3d 205 (3rd Cir. 2012); U.S. v. D'Andrea, 440 Fed. Appx. 273 (5th Cir. 2011); and U.S. v. Young, 613 F.3d 735 (8th Cir. 2010).

Young was not charged with aggravated rape. He was charged with attempted aggravated rape, and the facts presented by the State established his necessary intent and other elements of the crime. The state court reasonably applied Louisiana law to find that the jury's attempt verdict was appropriate even when the intended victim was fictitious.

Petitioner has not cited any clearly established federal law, established by the Supreme Court, that was unreasonably applied by the state courts in the adjudication of this issue.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court

to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of July, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE